WARD, Judge.
This is the second appeal in a paternity suit brought by Sherry R. Rigaud against Gustave J. Deruise. The first appeal was taken by Ms. Rigaud from an adverse trial court evidentiary ruling which resulted in the exclusion from evidence the results of the blood tests of Ms. Rigaud, Mr. Deruise, and the minor child. In that appeal, this court upheld the trial court’s evidentiary ruling but reversed the trial court’s decision which dismissed Ms. Rigaud’s petition. This court remanded the case for additional blood tests and a retrial. Rigaud v. Deruise, 539 So.2d 979 (La.App. 4 Cir.1989).
After remand and retrial, the trial court once again dismissed Ms. Rigaud’s suit, concluding that she failed to carry her burden of proof. This ruling was the consequence of two evidentiary rulings. The first excluded the testimony of an expert whose testimony was offered to explain the second blood testing of Ms. Rigaud, Mr. Deruise, and the minor child. The trial court excluded that testimony because Ms. Rigaud did not file a report of the second blood testing results into the court record. The trial court concluded Ms. Rigaud was required by LSA-R.S. 9:397.3 to file a report of the second testing, and because she did not, the court excluded the expert testimony describing the testing and the results of those tests. The second evidentiary ruling excluded the entire testimony of one of Ms. Rigaud’s witness because that witness happened to read part of the transcript of the first trial.
Ms. Rigaud has appealed and contends that these erroneous evidentiary rulings excluded crucial material evidence and that those trial errors led the trial court to wrongly conclude that Ms. Rigaud failed to carry the burden to prove paternity. We agree and reverse. The trial court erred by excluding Dr. L. Ray Bryant’s testimony explaining the results of the second blood testing; and the trial court erred by excluding the testimony of Ms. Rigaud’s witness, Ms. Sheila Smith.
*763 Dr. L. Ray Bryant, an expert in clinical pathology and physical anatomy, was called to testify for the second trial. Mr. Deruise objected to his testimony because Ms. Ri-gaud had not filed Dr. Bryant’s report in the trial record. The trial court sustained the objection and excluded the testimony and reports he had prepared, relying on LSA-R.S. 9:397.3, particularly the first paragraph.
Admissibility and effect of test results
A. A written report of the results of the initial testing, certified by a sworn affidavit by the expert who supervised the tests, shall be filed in the suit record. A notice that the report has been filed shall be mailed by certified mail to all parties by the clerk of court or shall be served in accordance with Code of Civil Procedure Article 1314. A party may challenge the testing procedure within thirty days of the date of receipt or service of the notice.
B. If the court finds there has been a procedural error in the administration of the tests, the court shall order an additional test made by the same laboratory or expert. If there is no timely challenge to the testing procedure or if the court finds there has been no procedural error in the testing procedure, the certified report shall be admitted in evidence at trial as prima facie proof of its contents, provided that the party against whom the report is sought to be used may summon and examine those making the original of the report as witnesses under cross-examination.
C. Any additional testing ordered by the court pursuant to this Part shall be proved by the testimony of the expert.
D. If the court finds that the conclusions of all the experts as disclosed by the reports, based upon the tests, are that the alleged father is not the father of the child, the question of paternity shall be resolved accordingly. If the experts disagree in their findings or conclusions, the question shall be submitted upon all the evidence.
In the first appeal, this court reversed and remanded for additional testing, citing the above statute, particularly paragraphs (B) and (C), as authority for its decision. The second series of tests were conducted at Baptist Hospital in New Orleans under the supervision of Dr. Bryant. After the trial court excluded Dr. Bryant’s testimony and the reports he prepared, Ms. Rigaud proffered Dr. Bryant’s testimony and the reports.
We believe the trial court erred because paragraph A of LSA-R.S. 9:397.3 applies only to the report of the initial testing. Paragraphs A and B relate to admission of a blood test report as evidence without the necessity of having an expert witness testify. When the procedure for admission under Paragraph A is flawed, as this court found in the first appeal, then the expert must testify, and the expert’s testimony in court supplants the report required by the statute. In other words, Paragraph A does not apply when the court orders additional testing because the report is not admissible in evidence without the testimony of the expert who prepared it. LSA-R.S. 9:397.3(C) governs: “Any additional testing ordered by the court pursuant to this Part shall be proved by the testimony of the expert.” That expert testimony is of course the best evidence, and the expert may then be cross-examined. A report is not sufficient to prove the results of the additional blood test, and the statute does not require that a report of the second test has to be filed.
In pre-trial pleadings, Ms. Rigaud listed Dr. Bryant as a witness that she would call during trial. Dr. Bryant had spoken with Mr. Deruise, his attorney, Ms. Rigaud, her attorney, and the minor child during the second blood tests. Mr. Deruise knew Dr. Bryant would testify about the test results and give his conclusions on the issue of paternity. At that point, Dr. Bryant was just like any other expert and Deruise could obtain his report and even conduct discovery by deposing him. See C.E. Art. 706. We conclude the trial judge erred in excluding Dr. Bryant’s testimony and his analysis of the second blood testing.
Ms. Rigaud’s next argument of trial error concerns the exclusion of the testimo *764 ny of Ms. Sheila Smith. Ms. Smith, who was not called as a witness in the first trial, was offered in the retrial as a fact witness to rebut Mr. Deruise’s testimony. Counsel for Deruise objected to Ms. Smith being allowed to testify. He advised the court that on the morning of the second trial, Ms. Smith picked up one of the volumes of the first trial’s transcript and read it. After the objection and prior to ruling, the trial judge questioned Ms. Smith who admitted that she read a portion of the record which contained Deruise’s testimony. Thereafter, the trial court would not permit Ms. Smith to testify. Ms. Rigaud proffered Ms. Smith’s testimony.
C.E. Art. 615 applies to the situation. That article gives the trial court authority to order exclusion of witnesses for the purpose of preventing one witnesses’s testimony from influencing another. Section B provides the means for enforcement: “A court may impose appropriate sanctions for violations of its exclusion order including contempt, appropriate instructions to the jury, or when such sanctions are insufficient, disqualification of the witness.” But the official comments are helpful.
(f) Disqualification is the most drastic remedy. It precludes a party from adducing perhaps vital evidence ... When a party has had no knowledge of the violation and has played no role in bringing it about, disqualification unjustly impairs his case.
* * * * * *
Although C.E. Art. 615 gives the trial court discretion as to which course of action best results in. enforcement of its orders, this must be balanced by the right to a fair trial, and the exercise of that discretion is subject to abuse. In this case, there is no indication that Ms. Rigaud or her attorney played any part in the witness’s perusing the prior trial’s transcript. As a matter of fact, the witness testified she was reading trial documents out of boredom, waiting for the trial to begin, and that any casual reading of Deruise’s testimony was a coincidence. In a trial before the court, where the trial court can decide what weight to give to the testimony, it is an abuse of discretion to exclude the testimony in this situation. We hold that the trial court erred by excluding Sheila Smith’s testimony.
The burden of proving paternity is by a preponderance of the evidence. LSA-C.C. Art. 209; Williams v. Olden, 561 So.2d 871 (La.App. 2 Cir.1990). Dr. Bryant’s proffered testimony showed that he is a physician certified as a specialist in pathological anatomy and clinical pathology, qualified to conduct blood grouping tests to determine parentage. His qualifications are impressive and he has given expert testimony on numerous occasions. To summarize his opinion, blood grouping testing excludes falsely accused males. Dr. Bryant’s testimony and reports may be summarized to say that if Mr. Deruise were not the father, then there is a 99.53% probability that he would be excluded by the tests. Stated in different terms, Dr. Bryant was of the opinion after testing the blood of Ms. Rigaud, Mr. Deruise, and the child, there is a 99.08% probability that Mr. Deruise is the father.
Sheila Smith’s proffered testimony was given to rebut Mr. Deruise’s testimony that he did not date Ms. Rigaud during the time the minor was conceived. Mr. Deruise had testified that he and Ms. Rigaud stopped seeing each other at least six months before the date of conception. Smith testified that she saw Deruise and Ms. Rigaud together after this, and as a matter of fact, she saw Deruise and Ms. Rigaud together when Ms. Rigaud was obviously pregnant. Mrs. Smith said that she saw Ms. Rigaud and Mr. Deruise at Ms. Rigaud’s house more than 5 times, and she is certain that this included the time of probable conception. Ms. Smith said Mr. Deruise did not stop dating Ms. Rigaud until late in 1982, after Ms. Rigaud was pregnant.
Ms. Rigaud testified that she and De-ruise had sexual intercourse during the time of likely conception. Deruise denied that there was any sexual relationship when she would have conceived, and testified he stopped dating her long before the date of conception. Other witnesses testified for Deruise, and some said they did *765 not see Deruise with Ms. Rigaud at the time of probable conception. Other evidence indicated Ms. Rigaud dated other men while she was dating Mr. Deruise.
When the trial court errs in eviden-tiary rulings this court does not review a trial court’s findings of fact under a manifest error standard. This court must make an independent finding of fact, and determine whether the plaintiff has proved the allegations by a preponderance of the evidence. The Louisiana Supreme court has ordered this court to render judgment in cases where the record is sufficiently complete to support a ruling. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975). In this case, in both instances where the trial court erred by excluding the testimony, a proffer was made by Ms. Rigaud and in both instances Deruise’s counsel had an opportunity for cross-examination. Direct and Cross-examination were conducted in open court but outside of the presence of the trial judge. If we consider their proffered testimony the same as if it were given during the trial, the record is sufficiently complete, and in compliance with Gonzales, supra, we render judgment. A review of the entire record of the testimony of the expert and medical witnesses, plus the medical evidence, convinces us that the evidence clearly preponderates in favor of the plaintiff, Sherry Rigaud. For the foregoing reasons, we reverse the judgment of the trial court and render judgment in favor of Ms. Rigaud, holding that Gustave Deruise is the father of the minor child, Angela Roby. This matter is remanded to the Civil District Court for a determination of child support in accordance with LSA-R.S. 9:399.
REVERSED AND RENDERED IN PART; REMANDED IN PART.