CHARLES R. JONES, Judge.
bln this appeal, Sean Gebhard seeks review of the district court judgment denying his motion to modify child and spousal support. Specifically, Mr. Gebhard argues that a material change in circumstances justifies a modification of the amount of child and spousal support provided in the parties’ consent judgment. For the following reasons, we affirm.
Mr. Gebhard and Ms. Shannon Gebhard married in 1987. During the marriage, two children were born: Samantha (d.o.b. July 11,1989) and Sean Michael, Jr. (d.o.b. April 6, 1993). Also during the marriage, Mr. Gebhard incorporated his construction *719 company and formed Gebhard Enterprises, Inc. Ms. Gebhard testified that she worked at Gebhard Enterprises during the marriage.
The parties separated on June 4, 2006, and received a judgment of divorce on August 28, 2007. On August 28, 2007, the parties additionally entered into a consent judgment regarding spousal support and child support, among other things. The consent judgment-bears the signatures of Mr. Gebhard and his counsel, Ms. Gebhard and her counsel, as well as the district court judge. The consent judgment provides that Mr. Gebhard is to pay spousal support to Ms. Gebhard in the amount of $2,000.00 per month, as both interim and permanent spousal support, for a period of ten years, beginning September 1, 2007. Beginning'July 1, 2017, Mr. Gebhard is to pay $1,500 for an additional ten years, with the last payment on July 1, 2027. The consent judgment 12provides that Mr. Geb-hard is to pay child support to Ms. Geb-hard in the amount of $2,000 per month for the support of Samantha and Sean. Further, the consent judgment states that “[t]he $2,000[.00] per month child support will remain in effect and is not subject to reduction until the youngest child, Sean Michael, Jr., reaches the age of 18 years and graduation from secondary school.” In addition to child support, Mr. Gebhard agreed to pay for Sean Michael, Jr.’s secondary educational expenses, as well as college expenses for both children.
On September 17, 2009, Ms. Gebhard filed a rule for contempt, attorneys’ fees, motion and order for judgment for past due spousal support and incidental obligations, motion and order to transfer community property for satisfaction of judgment of community property obligations and other incidental obligations. For purposes of this appeal, the relevant allegations in Ms. Gebhard’s rule are that Mr. Gebhard failed to pay spousal and child support, as well as tuition, as ordered.
In response, Mr. Gebhard filed a motion to rescind and/or modify consent judgment. Mr. Gebhard testified that Ms. Gebhard threatened to bring the children to court and “drag his name through the mud” if he did not sign the August 23, 2007 consent judgment. Mr. Gebhard averred the only reason he entered into the ^consent judgment was to protect his children. As his consent was vitiated by duress, Mr. Gebhard argued the consent agreement should be rescinded.
Alternatively, Mr. Gebhard argued that a severe decrease in his earnings justified a modification of the August 23, 2007 consent judgment. Mr. Gebhard testified that at the time of the consent judgment, he was earning $200,000 per year through Gebhard Enterprises. Mr. Gebhard testified that 2007 started out okay for Geb-hard Enterprises, but that business tapered off in the middle or end of 2007. Mr. Gebhard stated that in 2008, Gebhard Enterprises was just barely getting by and in 2009, fell on its face. Mr. Gebhard testified that Gebhard Enterprises is basically dormant, although the accounts receivable amount is about $200,000 and there are bids on jobs that he is hoping to be awarded. Mr. Gebhard noted that some of the’ equipment used by Gebhard Enterprises is owned outright and that other equipment is burdened by a note thereon. Mr. Gebhard also testified that he owes approximately $140,000 on a line of credit for the business. Mr. Gebhard stated that a decline in the industry forced him to take a project manager position with Carubba, Inc. Mr. Gebhard testified that Gebhard Enterprises had done business with Garubba for the past fifteen years. Mr. Gebhard acknowledged that key former Gebhard Enterprises employees were working at Icon Enterprises, a *720 company formed by his current wife, Nikki. Mr. Gebhard testified that he was trying to hang on to his key employees. He stated that Icon Enterprises was securing jobs up to $50,000, though he was accustomed to $500,000-$2,000,000.
[4Nikki Gebhard testified that she went to work for Gebhard Enterprises in 2005, after Hurricane Katrina. As of 2007, Nikki received a salary of $300 per week. Nikki testified that in December of 2007 or January of 2008, she received a $30,000 bonus from Gebhard Enterprises. Nikki stated that half of the proceeds of the bonus were used as a down payment on the house she currently shares with Mr. Gebhard. Nikki noted that another employee, William LeBouef, received a $75,000 bonus in 2007.
Nikki testified that she and Mr. Geb-hard married in October of 2009 in Panama City Beach, Florida. Shortly after the wedding, Nikki utilized $8,000 from cash wedding gifts and opened Icon Enterprises, a construction company that performs small jobs. Nikki testified that Icon Enterprises was opened to bring money into their home. Nikki testified that Mr. Geb-hard does not work at Icon Enterprises, but noted that he does supply her with knowledge and guidance. Nikki stated that Icon Enterprises has one employee, Anthony Bryan. Nikki testified that Icon Enterprises put down a slab for Carubba. She also testified that she also works as a nurse at St. Tammany Parish Hospital and receives money for picking up a friend’s child from school.
Roy Carubba testified that he hired Mr. Gebhard near the end of 2009 at a salary of $52,000 per year. Mr. Carubba testified that his practice is mainly in commercial buildings and that there has been a decline in that market since 2007.
At the close of the hearing, the district court denied Mr. Gebhard’s motion to rescind and/or modify consent judgment and took Ms. Gebhard’s rule for contempt 15under advisement. Thereafter, the court granted Ms. Gebhard’s rule for contempt. The district court found Mr. Gebhard in arrears in the amount of $79,226.81 on child and spousal support. The district court sentenced Mr. Gebhard to serve thirty days in the parish prison unless Mr. Gebhard discharged the arrearage amount within thirty days. This appeal followed.

DISCUSSION

The trial court has great discretion in decisions concerning modification of support decrees, and such decrees will not be disturbed on appeal absent a clear abuse of discretion. Hansel v. Hansel, 2000-1914, p. 4 (La.App. 4 Cir. 11/21/01), 802 So.2d 875, 879. (Citations omitted). An appellate court must not base its determination on whether it considers the trier of fact’s conclusion to be right or wrong, but on whether the fact finder’s conclusion was reasonable. Durfee v. Dwrfee, 44,281, p. 3 (La.App. 2 Cir. 5/13/09), 12 So.3d 984, 987.
Mr. Gebhard argues the district court erred in denying his motion for modification. Mr. Gebhard avers that a change in circumstances occurred between the time of the consent judgment and the time of the motion in that his income changed. He argued that at the time of the consent judgment, he earned $200,000 per year, and that he was forced to take a job working for Carubba at a salary of $52,000 per year. Ms. Gebhard counters that the consent judgment provides a specified time for spousal support to end, and specifies that child support is not subject to reduction. In the alternative, Ms. Gebhard argues that Mr. Gebhard failed to prove that a material change in circumstances had occurred.
*721 | (¡First, we address Ms. Gebhard’s contention that the consent judgment bars modification to either spousal support or child support.
A consent judgment is a bilateral contract which is voluntarily signed by the parties and accepted by the court. Durfee, 44,281, p. 4, 12 So.Sd at 987-988. (Citations omitted.) It has binding force from the voluntary acquiescence of the parties. Id. A contract is unlawful when the enforcement of the obligation would produce a result prohibited by law or against public policy. Id.
Whether the amount of spousal support awarded through a consent judgment can be modified depends upon the language employed in the consent judgment. Ray v. Ray, 2005-0873, p. 5 (La.App. 1 Cir. 3/23/07), 960 So.2d 174, 178. To bar modification of the duration and/or amount of spousal support, the consent judgment must evidence clear intent of the parties to do so. Id.
In Williams v. Poore, 2010-1087, p. 1 (La.App. 4 Cir. 1/12/11), 55 So.3d 953, the consent judgment provided that Mr. Poore was to pay to Ms. Poore “permanent spousal support in the amount of $1,500.00 per month beginning on August 1, 1998, and continuing thereafter until such time as Nina Day Williams Poore remarries or dies.” The Court stated that “the mere listing of events which will terminate spousal support does not evidence a clear intent that the amount of spousal support can never be changed.” Id., p. 5. (Citations omitted.) As the consent judgment lacked non-modification language, the Court agreed that Mr. Poore could seek a modification of the amount of spousal support. Id.
|7In this case, the consent judgment provides that Mr. Gebhard is to pay spousal support to Ms. Gebhard in the amount of $2,000 per month, as both interim and permanent spousal support, for a period of ten years, beginning September 1, 2007. Beginning July 1, 2017, Mr. Gebhard is to pay $1,500 for an additional ten years, with the last payment on July 1, 2027. The consent judgment further provides that, “[t]he interim spousal support and permanent spousal support are to remain in full force and effect for the entire twenty (20) year period regardless if Shannon Gebhard remarries or not.” While the consent judgment provides for a specific duration, the consent judgment lacks non-modification language regarding the amount of spousal support. Absent such language, Mr. Gebhard is entitled to seek a modification of spousal support.
Conversely, as to child support, the consent judgment at issue contains non-modification language. Specifically, the consent judgment provides that “[t]he $2,000 per month child support will remain in effect and is not subject to reduction until the youngest child Sean Michael Geb-hard, Jr. reaches the age of 18 years and graduation from secondary school.”
Fathers and mothers, by the very act of marrying, contract together the obligation of supporting, maintaining and educating their children. La. C.C. art. 227. The obligation of support imposed by La. C.C. art. 227 is “firmly entrenched in our law and is a matter of public policy.” Durfee, 44,281, pp. 4-5, 12 So.3d at 988. Consequently, child support agreements are generally subject to modification upon a showing of a change in circumstances regardless of language to the | ^contrary. Megison v. Megison, 1994-152, pp. 4-5 (La.App. 5 Cir. 9/14/94), 642 So.2d 885, 888; Ellefson v. Ellefson, 616 So.2d 221, 224 (La.App. 5 Cir.1993). Therefore, regardless of the non-modification language contained in the consent judgment at issue, *722 Mr. Gebhard is entitled to seek a modification of the amount of child support.
The law provides that an award of child support may be modified if the circumstances of the child or of either parent materially change. La. C.C. art. 142. Likewise, an award of periodic support may be modified if the circumstances of either party materially changes. La. C.C. art. 114. As it relates to child support, La. R.S. 9:311 further provides that “an award for support shall not be modified unless the party seeking modification shows a material change in circumstances of one of the parties between the time of the previous award and the' time of the rule for modification of the award.” La. R.S. 9:311(A). The comments provide:
To obtain a reduction or increase in support the change in circumstances of one of the parties must be material, defined as a change in circumstances having real importance or great consequences for the needs of the child or the ability to pay of either party. The amendment specifying that the court first consider the threshold matter of materiality of the change in circumstance overrules Stogner v. Stogner, 739 So.2d 762 (La.1999)[sic], in which the Louisiana Supreme Court held that any change in circumstances is sufficient to justify a reduction or increase in child support, a conclusion extended to spousal support by the court of appeal in Council v. Council, 775 So.2d 628 (La.App. 2 Cir.2000)[sic].
La. R.S. 9:311 Comments (a). (Emphasis in the original).
IgThus, in order to bear his burden of proof, Mr. Gebhard needed to prove a change in circumstances having real importance or great consequences on his ability to pay. To meet this burden, Mr. Gebhard testified that Gebhard Enterprises is dormant and that he was required to take a job with Carubba. At the time of the consent judgment, Mr. Gebhard was making $200,000 per year. Mr. Carubba testified that his salary was now $52,000 per year. However, Mr. Gebhard also testified that Gebhard Enterprises has about $200,000 in accounts receivable and several outstanding bids. Additionally, Mr. Geb-hard testified that Gebhard Enterprises started experiencing a tapering off of business in the middle or end of 2007. Yet, Mr. Gebhard paid Mr. LeBouef a $75,000 bonus in 2007, and paid Nikki, his current wife, a $30,000 bonus in December of 2007 or January of 2008.
Further, while Mr. Gebhard’s current wife Nikki testified that her construction company, Icon Enterprises, receives only guidance and knowledge from Mr. Geb-hard, Mr. Gebhard’s testimony reveals more. Mr. Gebhard testified that he suggested Nikki start Icon Enterprises and further said to her:
I’m in [the] construction' business, anything we can pick up and run. Some of my former employees are doing several little, small jobs through her new company, and again, you know, they’re small. I’m trying to hold on to my key employees so — bring Gebhard Enterprises back, you know, get some contracts. Believe me, $50,000 contract, you know, I’m not going far. You know, I’m used to half a million, million, $2,000,000 jobs. (Emphasis supplied.)
Nikki also testified that one of the jobs that Icon Enterprises performed was putting down a slab for Carubba. Nikki testified that she has yet to receive income from Icon Enterprises, but that she has been reimbursed the $8,000 received as | mwedding gifts that she used to start the business. Nikki testified that she runs Icon Enterprises on her days off from her nursing job. Nikki stated that when she does work on Icon Enterprises, she pretty *723 much cuts checks as Icon Enterprises is a brand new business. Clearly, Mr. Geb-hard is providing more than guidance and knowledge to Icon Enterprises.
Further, Mr. Gebhard submitted no documentation regarding his income or his expenses, for either Gebhard Enterprises or his personal expenses (i.e., no tax returns, no bank statements). In contrast, Ms. Gebhard submitted two subcontractor contracts whereby Gebhard Enterprises was to perform work for Carubba. Both of the contracts were entered into in 2009. One contract contained a total contract amount of $460,000, and the other contained a total contract amount of $55,000. Furthermore, Mr. Gebhard received six (6) income-producing properties in the community property partition. Mr. Gebhard provided no documentation regarding any of these properties. In attempting to prove a material change of circumstances, Mr. Gebhard relied on testimony alone. Where the fact finder’s conclusions are based on determinations regarding credibility of a witness, the manifest error standard demands great deference to the trier of fact because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Dwrfee, 44,281, pp. 8-4, 12 So.3d at 987.
In this instance, given the lack of documentary evidence, the inconsistencies between Mr. Gebhard and Nikki Gebhard’s testimony regarding Icon Enterprises, 1 uthe bonuses awarded when Gebhard Enterprises was tapering off, and the great deference given the trier of fact in determining credibility, we find the denial of Mr. Gebhard’s motion to modify to be reasonable and not an abuse of the district court’s discretion.

DECREE

For the foregoing reasons, the judgment of the district court denying the motion to modify is affirmed.

AFFIRMED.